UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| RICHARD GILMORE, STEVEN RUSHING<br>BILL BEAZLEY, LECEL KIMBALL<br>LAM HUYNH, HONG HUYNH<br>DIEM HUYNH, MAI HUYNH<br>BRIAN MCDANIEL, MINH HUYNH<br>TRUC CAO, DAN NGUYEN,<br>WILLIAM PRAKER<br>KEVIN BALLANTYNE<br><br>      Plaintiffs,<br><br>vs.<br><br>KIRBY INLAND MARINE LP<br>CLEOPATRA SHIPPING AGENCY LTD<br><br><br><br><br><br>      Defendants. | CIVIL ACTION NO.<br><br><br><br><br><br><br><br><br>JUDGE<br><br><br><br><br><br>COMPLAINT FOR DAMAGES<br>JURY TRIAL DEMANDED<br><br>RULE 9(H)<br>ADMIRALTY |

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

**NOW COMES PLAINTIFFS, RICHARD GILMORE, STEVEN RUSHING, BILL BEAZLEY, LECEL KIMBALL, LAM HUYNH, HONG HUYNH, DIEM HUYNH, MAI HUYNH, BRIAN MCDANIEL, MINH HUYNH, TRUC CAO, DAN NGUYEN, WILLIAM PRAKER and KEVIN BALLANTYNE** through undersigned counsel, individually and as representatives of the class defined herein bring this class action and who allege as follows:

### INTRODUCTION

1. On March 22, 2014, a collision occurred in the Houston Ship Channel which caused the spill of more than 168,000 gallons of oil into the Gulf of Mexico ("Oil Spill") – a

mere 8 days after another Kirby Inland Marine LP collision in nearly the same location. Oil spills are one of the most pervasive and devastating environmental disasters in the United States and cause significant damage to the neighboring coastal communities and its citizens. In this instance, over 168,000 gallons of oil or 4,000 barrels of oil were released which caused the closure of two ports, ferry services, and nearly a hundred boats were not permitted to enter or exit the bay areas a day. The oil quickly spread over 12 miles and is depleting and destroying offshore, marine, and coastal environments in the Gulf of Mexico.

2. Plaintiffs have suffered economic injury, damage and/or losses as a direct and foreseeable result of the Oil Spill and its devastating impact on the offshore, marine and coastal environments.

3. Given the nature of the Oil Spill, and its uncertain impact on nature and the environment, the full extent of the Oil Spill's impact is not yet known, and Plaintiffs reserve the right in full to amend this Complaint by, among other things, adding new claims and new defendants.

**PARTIES**

4. Plaintiffs are individuals and entities who are commercial fishermen or businesses who have suffered losses as a result of the Oil Spill.

5. Defendant Kirby Inland Marine, LP. ("Kirby Marine") is a Delaware limited partnership that does business in the State of Texas. This Court has personal jurisdiction over Kirby Marine pursuant to Tex. Civ. Prac. & Rem. Code § 17.042, in combination with Rule 4 of the Federal Rules of Civil Procedure, because Defendant committed a tort in whole or in part in Texas and/or has caused injuries to the Plaintiffs in Texas. Defendant has had continuous and

systematic contacts with the state of Texas. At all times, the M/V SUSAN was owned, manned, possessed, managed, controlled, chartered, and/or operated by Kirby Marine.

6.      Defendant, Cleopatra Shipping Agency, LTD, ("Cleopatra") is a foreign corporation with offices in Greece that does business in the State of Texas.  At all material times, the M/V SUMMER WIND was owned, manned, possessed, managed, controlled, chartered, and/or operated by Cleopatra Shipping Agency, LTD.

## JURISDICTION/VENUE

7.      Jurisdiction is proper before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear all Cases of admiralty and maritime jurisdiction.

8.      In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

9.      Jurisdiction is proper because the claims presented are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

10.     Venue is appropriate in this District under 28 U.S.C. § 1391 because Defendants do business herein, some Plaintiffs resides and does business herein, the injury or damages occurred herein, a Defendant resides herein, or the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL ALLEGATIONS

### The Collision and Oil Spill

11.     On or about March 22, 2014, a collision occurred between a fuel oil barge being pushed by the M/V MISS SUSAN and a 585-foot bulk carrier cargo ship, M/V SUMMER WIND. The collision caused the breach of the barge's hull and tank resulting in a large spill of heavy, black tar-like fuel oil.  The barge sunk to the bottom of the channel and remains partially

submerged. It is unknown the specific amount of oil released into Galveston Bay, but the spill had a large and devastating effect on the coast of the Gulf of Mexico, and the cities surrounding the coast, including everyone involved in the marine industry. The collision also caused injury to six (6) crew members.

12. The Oil Spill necessitated a response effort. The oil released as a result of the spill was a heavy, thick crude oil that is difficult to remove.

13. The Defendants knew or should have known of the dangers associated with traveling in the dense fog and failed to take appropriate measures to prevent damage to Plaintiff and marine, coastal, and estuarine areas of the Gulf of Mexico. Defendants knew or should have known the nationwide effects of damaging the marine life in the Gulf of Mexico.

14. Moreover, additional safety mechanisms, technologies, and precautions were known and available to one or more of the Defendants but the Defendants elected not to employ them.

### The Economic Impact of the Oil Spill and Injuries to Plaintiffs

15. After the Oil Spill, an oil slick with a range of at least 12 miles formed. Additionally, thick, voluminous plumes of oil were identified in the waters and shores along the Gulf of Mexico. Oil washed ashore from the Gulf of Mexico and coastal waters and damaged marine animals' coastal habits.

16. The Oil Spill has impacted and continues to impact the Gulf of Mexico, and the Gulf Coast's shorelines threatening Plaintiffs' livelihood and business operations.

17. The oil from the *s*pill contains benzene, toluene, polyaromatic hydrocarbons and other compounds all of which are known carcinogens. The oil from the Oil Spill also contains mercury, lead and other heavy metals that are hazardous to the health of people and aquatic life.

4

18. The oil released is extremely hazardous to marine life in the Gulf of Mexico and the waters of the states bordering the Gulf of Mexico. It is especially hazardous to marine life at the bottom of the food chain, including creatures such as plankton, shrimp, and crabs.

19. These plankton, shrimp, and other marine creatures are vital to entire marine ecosystem, and the damaged sustained by these tiny marine creatures threatens the entire marine the species regularly sought by commercial and recreational fishermen.

20. As the Oil Spill immediately damaged the seafood harvesting and processing industry and the immediate tourist trade, the integral nature of the economy of the Gulf Coast results in damage throughout the state of Texas.

21. Plaintiffs consist of fishermen and shrimpers who have lost earnings due to the closures of the ports, and the immediate decline in demand of the catch.

22. Plaintiffs incurred losses as a direct and foreseeable result of the Oil Spill. There is no question that the fishing industry was effected as the reputation and quality of seafood was diminished.

### A.  CLASS DEFINTIONS AND ALLEGATIONS

23. Plaintiffs bring this action on behalf of themselves and all others similarly situated, the members of the following class: fisherman, shrimpers, and crabbers proclaim economic losses ("Class Members"). Claims are made on behalf of themselves and all others similar situated under Rule 23 of the Federal Rules of Civil Procedure.

### B. NUMEROSITY OF THE CLASS

24. The proposed class consists of thousands of individuals and businesses who have been legally injured by the disaster, making joinder impractical. Rule 23(a)(1) requires that the class is so numerous that joinder of all members is impracticable.

"There is no strict numerical test for determining the impracticability of joinder." *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Instead, "the numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 100 S.Ct. 1695, 1706 (1980). If, however, the class size reaches substantial proportions, the impracticability requirement can be satisfied based on numbers alone. *In re Am. Med. Sys.*, 75 F.3d at 1079.

25. In addition to the actual number of proposed class members, the court may also consider: 1) judicial economies achieved from avoiding multiple actions; 2) the geographic dispersion of proposed class members; 3) the financial means of proposed class members; 4) the ability of proposed class members to institute individual lawsuits; 5) the amounts of each proposed class member's individual claims; 6) the knowledge of the names and existence of additional proposed class members; and 7) whether proposed class members have already joined other, similar actions. *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 410 (S.D.N.Y. 1998). Here, proposed Class Members satisfy all these requirements.

### C. TYPICALITY AND COMMONALITY

26. The claims of the representative plaintiffs are typical of the claims of the class in that the representative, like all Class Members have suffered adverse effects proximately caused by the Oil Spill.

27. Furthermore, the factual basis of Defendants' misconduct are common to all Class Members and the present a common thread of misconduct resulting in injury to all members of the class.

### D. ADEQUACY OF REPRESENTATION

28. Rule 23(a)(4) requires that, "the representative parties will fairly and adequately

6

protect the interests of the class." Two criteria exist for determining whether the representation of the class will be adequate: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interest of the class through qualified counsel." *Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976). Here Plaintiffs share common interests with respect to others affected by the Oil Spill.

29. Further, Plaintiffs have retained counsel with substantial experience in maritime law, and in prosecuting environmental, mass tort, and complex class actions, including oil spills.

30. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interest adverse to those of the class.

### E.  PREDOMINANCE AND SUPERIORITY

31. There is a well-defined community of interest that the questions of law and fact common to the class predominate over questions affecting only individual class members and include, but are not limited to, the following:

    a.  Whether Defendants caused and/or contributed to the collision and Oil Spill;

    b.  Whether Defendants were negligent;

    c.  Whether Defendants acted maliciously or with reckless disregard; and

    d.  The amount of damages Plaintiffs and Class Members should receive in compensation.

32.  This suit may also be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class Members predominate over the questions affecting only individual members of the Class Members and a

class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member, depending on the circumstances, may be relatively small or modest, especially given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Furthermore, it would be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Moreover, even if Class members themselves could afford such individual litigation, the court system could not. Individual litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expenses to all parties and the court system presented by the complex legal issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. For these reasons, Plaintiffs seek certification of the class.

## **CLAIMS FOR RELIEF**

### COUNT 1
### NEGLIGENCE

33. Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here.

34. All times material hereto, Defendants were under a duty to utilize reasonable care in undertaking and carrying out their collective and respective activities onboard their vessels. At all times material hereto the vessels were owned, navigated, manned, possessed, managed, controlled, chartered and/or operated by one or more Defendants.

35. At all times material hereto, Plaintiffs have and continue to have a special interest in the use the Gulf Coast's marine and coastal environments, waters, natural resources, beaches,

estuarine areas to derive income from.

36. At all times material hereto, Defendants' operations in the Gulf obligated them to protect the Plaintiffs, who were within the appreciable zone of risk created by Defedants' activities and would foreseeably be exposed to harm due to those risks.

37. Defendants were under a duty of care to refrain from negligent conduct that would cause pollution of the waters, beaches, and natural resources of the Gulf Coast areas.

38. Defendants were under a duty to exercise reasonable care while participating in navigable operations to ensure that an Oil Spill and subsequent discharge of oil did not occur.

39. Defendants knew or should have known that the acts and omissions described herein could result in damage to Plaintiffs.

40. Defendants, respectively and collectively, failed to exercise reasonable care while participating in marine operations, and thereby breached duties owed to Plaintiffs.

41. Defendants, respectively and collectively, failed to exercise reasonable care while participating in marine operations to ensure that the Oil Spill did not occur, and thereby breached duties owed to Plaintiffs.

42. Defendants, respectively and collectively, failed to exercise reasonable care to ensure that oil would expeditiously and adequately be contained within the immediate vicinity of the collision, and thereby breached duties owed to Plaintiffs.

43. Defendants, respectively and collectively, failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects an uncontrolled oil spill into the waters of the Gulf of Mexico, and thereby breached duties owed to Plaintiffs.

44. Some of those breaches specifically include the following:

    a. Failing to properly operate the M/V SUSAN and M/V SUMMER WIND;

    b. Operating the M/V SUSAN and M/V SUMMER WIND in such a manner that a collision occurred, causing it to sink and the resulting Oil Spill;

    c. Failing to properly inspect the M/V SUSAN and M/V SUMMER WIND to assure the equipment and personnel were fit for their intended purpose;

    d. Acting in a careless and negligent manner without due regard for the safety of others;

    e. Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations, if they been so implemented and enforced, would have averted the collision, sinking, and the Oil Spill.

45. As a result of the Oil Spill caused by Defendants, Plaintiffs suffered economic injury and damage to physical property, damages and/or losses.

46. The Oil Spill was caused by Defendants resulted in an economic and ecological disaster that has directly and proximately caused a tortious invasion that has interfered with the special interest of the Plaintiffs to use the Gulf of Mexico's marine and coastal environments, natural resources, beaches, estuarine areas to derive income from tourism, fishing, and/or seafood related business.

47. Prior to the Oil Spill, Defendants had actual and/or constructive knowledge of the facts and circumstances leading to the Oil Spill. Defendants knew or should have known the failures would have caused losses.  Defendants' actions and inactions were grossly negligent, reckless, willful, and/or wanton.

48.  Plaintiffs are entitled to a judgment that Defendants are jointly and severally liable to Plaintiffs for damages suffered as a result of their negligence, gross negligence,

recklessness, willfulness or wantonness. Plaintiffs should be compensated for damages in an amount to be determined by the trier of fact, including punitive damages for Defendants' conduct.

## COUNT II
## GROSS NEGLIGENCE & WILLFUL MISCONDUCT

49. Plaintiffs repeat, reallege and make a part hereof each and every allegation contained in the preceding sections of this Action and incorporates same by reference as though fully set forth herein.

50. Defendants owed and breached duties of ordinary and reasonable care to Plaintiffs in connection with the maintenance of, and operation of the vessels, and additionally owed and breached duties to Plaintiffs to guard against and/or prevent the risk of the Oil Spill.

51. Defendants breached their legal duty to Plaintiffs and failed to exercise reasonable care and acted with reckless, willful, and wanton disregard in the negligent maintenance and/or operation of the vessels.

52. Defendants knew or should have known that their wanton, willful, and reckless misconduct would result in a disastrous oil spill, causing damage to those affected by the Oil Spill by failing to exercise reasonable care and acting with reckless, willful, and wanton disregard in the operation of the vessels.

53. Defendants acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs.

54. Plaintiffs are entitled to a judgment finding Defendants liable to Plaintiffs for damages suffered as a result of Defendant's gross negligence and/or willful misconduct and awarding Plaintiffs adequate compensation in an amount to be determined by the trier of fact, including punitive damages for Defendants' conduct.

**PRAYER FOR RELIEF**

55. WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, and solidarily, as follows:

56. Economic and compensatory damages in amounts to be determined at trial;

57. Punitive damages to the fullest extent available under the law;

58. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

59. Reasonable claims-preparation expenses;

60. Attorneys' fees and costs of litigation; and

61. Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

**REQUEST FOR TRIAL BY JURY**

62. Plaintiffs demand trial by jury.

Respectfully submitted,

Dated:  April 3, 2014.

THE BUZBEE LAW FIRM

By:   */S/ Anthony G. Buzbee*
Anthony G. Buzbee
Attorney in Charge
State Bar No. 24001820
S.D. Tex. I.D. No. 22679
Caroline E. Adams
State Bar No. 24011198
S.D. Tex. I.D. No. 27655
J.P. Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone: (713) 223-5393

Facsimile: (713) 223-5909
www.txattorneys.com

**ATTORNEYS FOR PLAINTIFFS**